**John HENDRICKS, Plaintiff–Appellant,**

**Mr. BOLTJA, Correctional Officer, Washington Corr. Facility; Sgt. Hopkins, Correctional Officer, Washington Corr. Facility, Defendants–Appellees.**

No. 00–275.

United States Court of Appeals, Second Circuit.

Oct. 3, 2001.

John Hendricks, Marcy, NY, pro se.

Martin A. Hotvet, Assistant Solicitor General, for Eliot Spitzer, Attorney General of the State of New York; Nancy A. Spiegel, Assistant Solicitor General, on the brief, Albany, NY, for appellees.

Present McLAUGHLIN, POOLER, Circuit Judges, SAND, District Judge.*

### SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

John Hendricks appeals from a judgment entered in the United States District Court for the Northern District of New York that dismissed his 42 U.S.C. § 1983 complaint against New York State Department of Corrections Officer Boltja and Sergeant Hopkins.

At the time of the events under review, Hendricks was incarcerated in the Washington Correctional Facility. In his complaint, Hendricks alleged that on July 29, 1998, Boltja seized a legal document on which Hendricks was working from a typewriter located in the prison's law library. Boltja tore that document into pieces, threw it into a garbage can, seized additional documents contained in an envelope, and also ripped them. Boltja then told

---

\* The Honorable Leonard B. Sand, Senior United States District Court Judge for the South-ern District of New York, sitting by designation.

Hendricks to "get [his] black ass out of the library" and returned the documents that had been in the envelope to him. Hendricks returned to his cell and complained to his dorm officer. Shortly thereafter, Hopkins summoned Hendricks to discuss the matter. Hendricks claims that he heard Hopkins direct Boltja to write a misbehavior report to cover himself. Hendricks never received a misbehavior report as a result of this incident.

Hendricks also alleged that on August 1, 1998, Boltja confiscated a document he intended to send to an attorney in Oregon and that Boltja frequently required him to leave the library before closing time.

Hendricks contended that the defendants' actions violated the First, Sixth, Eighth, and Fourteenth Amendments.

In January 1999, Hendricks moved the district court for a temporary restraining order and a preliminary injunction against Boltja's and Hopkins' alleged harassment. In support of his request he alleged that Boltja said to him, "[w]hy are you looking at me like that, do I look sexy," discouraged an inmate law clerk from helping him, denied him access to the heavy duty stapler, confiscated three pages of typing paper from Hendricks, telling him he should only take one at a time, and threatened to smash Hendricks' head open. He also alleged that Boltja and Hopkins talked to him too much under a variety of guises and thus stigmatized him. This motion was followed by a February 1999 letter in which Hendricks claimed that Boltja assaulted him and that after Hendricks reported the incident, he was keep-locked, which denied him access to the law library. In a September 1999 letter, Hendricks claimed that Boltja had threatened him after he learned Hendricks was working on a legal action against him. Hendricks was again keeplocked and subsequently placed in the Special Housing Unit. The district court denied Hendricks' motion for injunctive relief.

In October 1999, Hendricks moved for summary judgment. He argued that the misbehavior reports filed against him since he filed his lawsuit were made in retaliation for his use of the courts and it was uncontroverted that he was submitted to a governmental misuse of power in violation of the Eighth Amendment.

Defendants cross-moved for summary judgment. They submitted deposition testimony from Hendricks in which he admitted (1) he retyped and filed the documents Boltja ripped and did not suffer any prejudice from Boltja's actions; (2) he did not file an administrative grievance concerning the July 29, 1998, incident; and (3) he had been in the law library approximately six days a week since he arrived at the facility.

After reviewing all the materials submitted by defendants and plaintiffs, Magistrate Judge David R. Homer recommended that the district court deny plaintiff's motion and grant defendants summary judgment. He first noted that he would not address the claims Hendricks made after he filed his complaint because Hendricks had not sought to amend his complaint to include these claims. He rejected Hendricks' claims concerning the destruction of his documents and any lack of access to the law library, finding that Hendricks' own deposition testimony demonstrated that he did not suffer any injury. The magistrate judge also found that Hendricks' claims of racial epithets were not actionable under § 1983.

Hendricks filed objections, arguing principally that discovery was not complete because defendants had not fully answered his interrogatories; he was not provided with fair notice of his obligation to respond to summary judgment; and he was never

apprized of the procedure for amending his complaint.

The district court (Lawrence E. Kahn, J.) rejected Hendricks' objections, approved the report-recommendation, and dismissed the complaint. Hendricks filed a timely appeal in which he argues that (1) the district court failed to apprize him of the Rule 56 requirements for responding to a summary judgment motion; (2) the district court should have told him how to amend his complaint when it received his request for an injunctive relief and subsequent letters; (3) the district court should have compelled defendants to respond fully to Hendricks' discovery requests before it granted summary judgment; and (4) there were sufficient issues of fact to allow his lawsuit to proceed.

■ We first address Hendricks' procedural objections. Hendricks misstates the record when he claims that he did not receive notice of the requirements of Rule 56. Defendants attached to their moving papers the notice which is required by *Vital v. Interfaith Medical Center,* 168 F.3d 615, 621 (2d Cir.1999) and similar cases. Nor did the district court err when it granted summary judgment without compelling defendants to furnish the discovery Hendricks requested. Hendricks himself moved for summary judgment while his motion to compel was pending, thus indicating that there were no issues of fact to be resolved. And, he has not suggested what facts obtainable through the discovery process might have altered the judgment. Finally, the allegations of his complaint were themselves insufficient as a matter of law. Therefore, the district court did not abuse its wide discretion. *See M.B. v. Reish,* 119 F.3d 230, 232 (2d Cir.1997). We perceive nothing in Hendricks's submissions that should have alerted the district court that he wished to amend his complaint and thus to instruct him on the proper method for amending. Nothing in the district court's judgment or this summary order prevents Hendricks from bringing another lawsuit making the retaliation, assault, and harassment claims contained in his various post-complaint submissions.

■ We also agree with the district court on the merits. Hendricks' own admissions establish that he was not injured by the destruction of his documents or by any restriction of his access to the law library. Therefore he cannot sustain a claim for denial of access to the courts, which requires a showing of actual injury. *Lewis v. Casey,* 518 U.S. 343, 349–50, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The district court also correctly held that verbal harassment was not actionable. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (*per curiam* ).